IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

vs.                                                          CASE NO.: 4:03cr25-SPM

DAVID WAYNE JACKSON,

     Defendant.

_____/

## ORDER DENYING MOTION TO SUPPRESS

Defendant David Wayne Jackson's motion to suppress (doc. 29) was heard on Monday, May 16, 2005. Defendant contends that his arrest on January 30, 2003 in Quitman, Georgia was illegal because it occurred without a warrant and without probable cause. Defendant seeks to suppress evidence seized at the time of his arrest; specifically the rifle found in his truck.

**BACKGROUND**

The facts established by the testimony and a proffer by the defense at the hearing are as follows. On January 30, 2003, Quitman Georgia police were investigating a hit and run accident and looking for a blue Ford F-150 truck coming from the direction of Valdosta, Georgia, bearing a Florida Tag with a number that was partially identified. The truck, according to a dispatch from Lowndes County, hit another vehicle as the truck was leaving the Rumors

nightclub in the city of Valdosta, Lowndes County, Georgia.

The city of Quitman is located in neighboring Brooks County and it is approximately 15 miles from Valdosta. The Brooks County dispatch received the dispatch from Lowndes County and notified the Quitman police to be on the lookout for the truck.

Lieutenant W.C. Clemmons was patrolling in a marked vehicle when he spotted a truck matching the description pull into a Quick Stop convenience store in Quitman. Lt. Clemmons parked his patrol car behind the truck without blocking the exit path. As Defendant left the truck and walked toward a pay phone, Lt. Clemmons approached and asked to speak with Defendant. Defendant ignored Lt. Clemmons and proceeded toward the phone.

In the meantime, another officer arrived. Lt. Clemmons conferred with the other officer and they examined the rear end of Defendant's truck. The officers noticed that the truck had damage consistent with a collision. While the officers were behind the truck, Defendant returned from the pay phone, entered the truck, and put the truck in reverse to leave. Lt. Clemmons then ran to the driver's side and asked Defendant to step out of the vehicle to talk. Lt. Clemmons explained to Defendant that his truck matched the description of a truck involved in a hit and run accident at a nightclub in Valdosta. Defendant refused and stated he would not get out of the truck.

Lt. Clemmons then noticed a rifle lying on the front seat next to Defendant.

Lt. Clemmons pulled out his service revolver and ordered Defendant to get out of the truck. Defendant got out but then ran away toward the back of the truck and knocked the second officer to the ground. Defendant refused to stop running and had to be stunned with a taser to be controlled. During the altercation, the officers noticed an odor of alcoholic beverage on Defendant. The officers arrested Defendant for DUI. Other charges were added when the officers discovered that Defendant's license was suspended and that the rifle had been stolen.

**DISCUSSION**

As a general rule, law enforcement officers cannot seize a person absent probable cause. United States v. Sharpe, 470 U.S. 675, 690 (1985). A person is deemed to be seized when "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." Florida v. Bostick, 501 U.S. 429, 431 (1991).

The well-known Terry exception allows an officer to conduct a brief seizure and search of a person if the officer has an objectively reasonable suspicion that "criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968). In determining whether a Terry stop has been conducted properly, a two-part inquiry applies. United States v. Acosta, 363 F.3d 1141, 1144-45 (11th Cir. 2004). The first is "whether the officers had a reasonable suspicion that the

defendant had engaged, or was about to engage, in a crime." Id.  The second is "whether the stop went too far and matured into an arrest before there was probable cause."  Id.

In this case, Defendant rightfully concedes to the first part of the inquiry, that is, that Lt. Clemmons had reasonable suspicion to justify a Terry stop based on the dispatch he received concerning the hit and run.  Doc. 29 at p. 3.  Police are entitled to act on the strength of a radio bulletin.  Whiteley v. Warden, 401 U.S. 560, 568 (1971).  "[I]f a flyer or bulletin has been issued [by another law enforcement agency] on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, . . . to pose questions to the person, or to detain the person briefly while attempting to obtain further information."  United States v. Hensley, 469 U.S. 221, 232 (1985).  A stop of the Defendant in this case given the dispatch received by Lt. Clemmons was supported by reasonable suspicion.

Turning to the second part of the inquiry, Defendant argues that Lt. Clemmons obtained no information from Defendant to justify an arrest and that the Terry stop ended when Lt. Clemmons allowed Defendant to go to the pay phone.  Defendant further argues that Lt. Clemmons effected an arrest of Defendant, without probable cause, when Lt. Clemmons asked Defendant to get out of the truck.  These arguments are without merit.

Lt. Clemmons testified that although he did not prevent Defendant from going to the pay phone, Lt. Clemmons was still investigating the hit and run accident when Defendant got back in his truck and started to leave. There is no indication that a lengthy period of time had passed or that the continuation of the Terry stop was otherwise unreasonable at this point. The Court finds, therefore, that a Terry stop was still in progress.

Furthermore, contrary to Defendant's argument, the Terry stop did not mature into an arrest when Lt. Clemmons asked Defendant to step out of the truck. Officer safety is a legitimate concern that will outweigh a slight intrusion upon the liberty of a motorist when directed to leave a vehicle. United States v. Roper, 702 F.2d 984, 985 (11th Cir. 1983) citing Pennsylvania v. Mimms, 434 U.S. 106, 110-11(1977). "[A]n investigative stop does not become an arrest merely because an officer directs the subject of an investigation out of a vehicle." Roper, 702 F.2d at 985.

The fact that Lt. Clemmons later drew his weapon still did not convert the Terry stop into an arrest. "[A]n officer's display of weapons does not necessarily convert an investigatory stop into an arrest." Id. at 987. Upon observing the rifle on the seat of the truck, Lt. Clemmons was exercising reasonable caution when he drew his service revolver and again directed Defendant to leave the truck. Thus, Lt. Clemmons was still acting pursuant to a valid Terry stop. Id. at 988 (recognizing that use of weapons in connection with a stop is authorized when

police reasonably believe the weapons are necessary for their protection).

Lt. Clemmons eventually arrested Defendant after Defendant ran from the truck, knocked over an officer, and was stunned with the taser gun. At that point, Lt. Clemmons had probable cause to arrest Defendant on a number of grounds, including DUI. Defendant cannot make a good faith argument to the contrary.

Based on the foregoing, it is

ORDERED AND ADJUDGED that the motion to suppress (doc. 29) is denied.

DONE AND ORDERED this 20th day of May, 2005.

*s/ Stephan P. Mickle*
Stephan P. Mickle
United States District Judge